**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Kathleen Ragan, an individual. | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | **Case No. 1:17-cv-09208** |
| | ) | |
| BP Products North America, Inc., | ) | |
| a Maryland corporation; | ) | Honorable Marvin E. Aspen |
| BP America, Inc., | ) | Magistrate Judge Jeffrey T. Gilbert |
| a Delaware corporation; | ) | |
| | ) | Jury Trial Demanded |
| Defendants/Counterplaintiffs. | ) | |

**LOCAL RULE 56.1(a)(3) STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Kathleen Ragan is an individual and currently a resident of New York, New York. (Tab A, First Am. Compl., ¶ 2).

2. On April 23, 2015, BP America Inc. sent Ms. Ragan a written offer of employment. (Tab B, BP's Countercl., ¶ 6).

3. On April 27, 2015, Ms. Ragan accepted BP America Inc's written offer of employment. (Tab C, Executed copy of Ms. Ragan's Offer Letter).

4. Ms. Ragan was employed by BP Products America Inc. in Chicago, Illinois, beginning in June of 2015. (Tab B, BP's Answer to Am. Compl., ¶¶ 9–11; Tab B, BP's Countercl., ¶ 10).

5. BP Products North America, Inc. is a corporation organized under the laws of Maryland and is a subsidiary of BP America, Inc. (Tab B, BP's Answer to Am. Compl., ¶ 3; Tab B, BP's Countercl., ¶ 1; Tab C, Executed copy of Ms. Ragan's Offer Letter at p. 1).

6. BP America, Inc. is a corporation organized under the laws of Delaware. (Tab B, BP's Answer to Am. Compl., ¶ 4; Tab B, BP's Countercl., ¶ 1).

1

7. Ms. Ragan's Offer Letter states:

**Sign-on Payment**
Should you accept this offer, you are eligible to receive a one-time sign-on payment of $200,000 (gross). This will be earned and paid to you on your first regular paycheck. You must be an active employee of Marketing & Origination (GOA) at the time in order to receive this payment, which is contingent upon your compliance with all federal, state and local laws, BP Policies and Code of Conduct. You agree to repay 100% of this Sign-on Payment to BP if you resign or your employment is terminated with cause (e.g. breaching or non-compliance with the company's policies, guidelines, code of conduct, or not meeting performance requirements due to misbehaviours or willful disregards of BP rules or procedures) at any time within 24 months from the commencement date of this employment. In this case, the amount of the bonus must be fully repaid in cash in gross at least one day prior to the last date of employment. Your signature on this letter indicates your consent for BP to deduct the full or any remaining unpaid amounts of the Sign-on Payment (if owed under the terms of this letter agreement) from any wages, payments, bonuses, vacation, etc., that would have otherwise been paid to you at the time of termination.

(Tab C, Executed copy of Ms. Ragan's Offer Letter at p. 1).

8. BP America Inc. did not pay Ms. Ragan the $200,000 Sign-on Payment; rather, BP Products North America Inc. paid Ms. Ragan the $200,000 Sign-on Payment. (Tab D, BP America Inc.'s Supp. Answers to Interrog. No. 17; Tab E, BP Products North America Inc.'s Supp. Answers to Interrog. No. 17).

9. Ms. Ragan's Offer Letter states:

**1.4. Termination and Garden Leave**
Your position with the Company is an important one, and the stable performance of the duties performed by you is important to BPPNA. As such, the Company agrees to give you one month notice if your employment will be terminated, and you agree to give the Company one month notice should you decide to terminate your employment with BPPNA ("Notice Period"). However, BPPNA may terminate you without notice if you engage in conduct that is determined by the Company to be a serious breach of duties and/or obligations, gross misconduct, and/or violations of the BP Code of Conduct. Unless terminated by the Company earlier, your employment with BPPNA will end the last day of the Notice Period. During the Notice Period, BPPNA may require you to continue performing your duties or may relieve you of those duties and place you on paid leave

> through your termination date ("Garden Leave"). During Garden Leave, you will remain employed by BPPNA and receive your base salary and benefits; however, you will not accrue or earn bonus monies. During this Garden Leave, your duty of loyalty to BP remains intact, meaning you cannot directly or indirectly, actively engage or prepare to engage in the business of buying, selling, trading or structuring or executing transactions in commodities, assets or products in which BP is currently doing business or has plans to engage in business or has engaged in business, including but not limited to crude oil, refined petroleum products, synthetic crude oil, ethanol, methanol, biodiesel or other biofuels, paraxylene, benzene, toluene, aromatics, natural gas, natural gas liquids, power, emissions or renewable credits or allowances, currencies and other energy commodity trading, or swaps, options or derivatives relating to any such commodity.

(Tab C, Executed copy of Ms. Ragan's Offer Letter at pp. 6-7).

10. Ms. Ragan's employment was terminated on December 14, 2016. (Tab B, BP's Answer to Am. Compl., ¶ 31).

11. Ms. Ragan was placed on Garden Leave from December 14, 2016 to March 16, 2017. (Tab F, Kathleen Ragan Dep. 288:16–20).

12. The repayment of the $200,000 Sign-on Payment identified on page 1 of Ms. Ragan's Offer Letter ("Sign-on Payment") was not discussed with Ms. Ragan at the time of her termination. (Tab F, Ragan Dep. 321:9–20).

13. BP Products North America Inc. made one demand for repayment of the $200,000 Sign-on Payment following Ms. Ragan's termination before this lawsuit, in its July 26, 2017 confidential letter in response to Ms. Ragan's attorney. (Tab E, BP Products North America Inc.'s Supp. Answers to Interrog. No. 17; Tab G, James Bordignon Dep. 153:9–154:19).

14. Ms. Ragan continued to receive regular paychecks during her three months of Garden Leave. (Tab H, Decl. of Kathleen Ragan, ¶ 5).

15. Defendants decided to pay out Ms. Ragan's remaining vacation time at the time of her termination totaling 64 hours. (Tab H, Ragan Decl. ¶ 6; Tab I, BP_00001286).

16. BP Products North America Inc. did not deduct any amounts from Ms. Ragan's paychecks for reimbursement of the $200,000 Sign-on Payment. (Tab E, BP Products North America Inc.'s Suppl. Answers to Interrog. No. 18).

> Respectfully submitted,
> Kathleen Ragan
> */s/ Joseph L. Kish*_____
> One of her Attorneys

Joseph L. Kish – jkish@smsm.com
Matthew D. Kelly – mkelly@smsm.com
Segal McCambridge Singer & Mahoney Ltd.
233 South Wacker Drive, Suite 5500
Chicago, Illinois 60606
(312) 645-7800