**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Kathleen Ragan, an individual,

Plaintiff,

v.

BP Products North America, Inc., a Maryland corporation; BP America, Inc., a Delaware corporation,

Defendants.

and

BP Products North America Inc. and BP America Inc.,

Counter-Plaintiffs,

v.

Kathleen Ragan,

Counter-Defendant.

Case No. 1:17-cv-09208

Honorable Marvin E. Aspen

Magistrate Judge Jeffrey T. Gilbert

**BP PRODUCTS NORTH AMERICA INC.'S SUPPLEMENTAL ANSWERS TO INTERROGATORIES**

BP Products North America Inc. ("BPPNA") submits its Supplemental Answers to Plaintiff Kathleen Ragan's Interrogatories as follows:

**INTERROGATORY NO. 1:**

DESCRIBE ALL bases on which YOU terminated KATHLEEN RAGAN, and for EACH basis, IDENTIFY all individuals involved in YOUR decision, and IDENTIFY ALL facts and DOCUMENTS that evidences or support EACH basis.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the terms "bases" and "involved in." BPPNA objects to this interrogatory to the extent it seeks information protected by the attorney-client or work-product privileges. BPPNA states that it terminated Ragan's employment due to ongoing compliance, performance, and lack of judgment issues that Ragan had demonstrated during the approximately 18 months of her employment with BPPNA. Ragan had multiple compliance incidents during her employment, resulting in the removal of her trading DOAs (delegations of authority) and her being moved from a trading role to an origination role. She thereafter made very little progress in her origination role in building key relationships in the marketplace and she also then had another compliance incident. Ragan also purchased shares in a biofuels company without disclosure, which showed poor judgment on her part. The accumulation of Ragan's compliance, performance, and judgment failures demonstrated that she posed a significant risk to the business. Dan Barry, Carey Mendes, and Beth Cook took part in the decision to terminate Ragan's employment.

**INTERROGATORY NO. 2:**

DESCRIBE ALL actions by KATHLEEN RAGAN during her employment with YOU that violated YOUR code of conduct, IDENTIFY which provision of the code of conduct, and DESCRIBE ALL actions by YOU in response to each instance, IDENTIFY all individuals involved in YOUR action, and IDENTIFY ALL facts and DOCUMENTS that evidences or supports EACH action.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the terms "involved in" and "all actions." BPPNA

objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. During the approximately 18 months of her employment with BPPNA, Ragan demonstrated ongoing compliance, performance, and lack of judgment issues. These compliance incidents resulted in the removal of her trading DOAs (delegations of authority) and her being moved from a trading role to an origination role. She thereafter made very little progress in her origination role in building key relationships in the marketplace and she also had another compliance incident. Ragan also purchased shares in a biofuels company, and also did so without timely disclosure; both actions showed poor judgment on her part. Ragan's actions violated the provisions of the Code of Conduct regarding the use of good judgment and acting in a manner that is consistent with BP requirements, values, and behaviours (see pages 3, 4, & 5 of the Code of Conduct), and her purchase of shares in the biofuels company without timely disclosure was also inconsistent with the Code of Conduct's instruction that employees be proactive and manage conflicts of interest (see page 16 of the Code of Conduct). Dan Barry, Stephanie Curulewski, Donna Weimer, and Jim Bordignon took part in coaching Ragan on her compliance and lack of judgment issues; Dan Barry, Stephanie Curulewski, Carey Mendes, Zach Scott, and Jim Bordignon took part in the decision to remove Ragan's trading DOAs and to move her from a trading role to an origination role; Donna Weimer and Randy Tuurie took part in the investigation into Ragan's purchase of shares in the biofuels company; and Dan Barry, Carey Mendes, and Beth Cook took part in the decision to terminate Ragan's employment. BPPNA also notes that after the termination of Ragan's employment, it came to light that Ragan had engaged in an incident of inappropriate behavior with Zach Scott during her employment, in violation of the provisions of the Code of Conduct directing employees to treat everyone with respect (see p. 11 of the Code of Conduct) and to help create a work environment

free of all forms of harassment and to not make inappropriate comments of a sexual nature (see p. 12 of the Code of Conduct).

**INTERROGATORY NO. 3:**

DESCRIBE ALL actions by KATHLEEN RAGAN during her employment with YOU that violated YOUR policies, IDENTIFY which policy, DESCRIBE ALL actions by YOU in response to the instances indicated, IDENTIFY all individuals involved in YOUR action, and IDENTIFY ALL facts and DOCUMENTS that evidences or supports EACH action.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "involved in" and "all actions." BPPNA objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA states see its answers to Interrogatory Nos. 1 and 2 above. BPPNA further states that Ragan's actions described in its answers to Interrogatory Nos. 1 and 2 also violated the provisions of BPPNA's IST Global Trading Guidelines & Requirements and BPPNA's Conflicts of Interest Policy that provide that before employees trade, they should be clear that it is within their Delegation of Authority and book limits, employees should recognize and manage conflicts of interest appropriately, act only within their delegation of authority, understand and comply with all relevant risk and compliance requirements, be aware of and comply with any applicable position limits, exercise care and judgment when trading, comply with certain policies and procedures when transacting out of office, take care at all times to minimize the opportunity for a potential conflict of interest to arise, shall not undertake personal account transactions if they are likely to give rise to an actual or potential conflict of interest, and shall disclose to their line manager all situations that might create even the appearance of a

conflict of interest (see pages 2, 3, 6, 8, 10, 14, 24 & 25 of the IST Global Trading Guidelines & Requirements and page 4 of the Conflicts of Interest Policy).

**INTERROGATORY NO. 4:**

DESCRIBE ALL actions by KATHLEEN RAGAN during her employment with YOU that violated YOUR trading guidelines, IDENTIFY which guideline, DESCRIBE ALL actions by YOU in response to the instances indicated, IDENTIFY all individuals involved in YOUR action, and IDENTIFY ALL facts and DOCUMENTS that evidences or supports EACH action.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term “involved in” and “all actions.” BPPNA objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA states see its answer to Interrogatory No. 3 above.

**INTERROGATORY NO. 5:**

DESCRIBE ALL actions by KATHLEEN RAGAN during her employment with YOU that violated Federal or state laws or regulations and specify which law or regulation, DESCRIBE ALL actions by YOU in response to EACH instance, IDENTIFY all individuals involved in YOUR action, and IDENTIFY ALL facts and DOCUMENTS that evidences or supports EACH action.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term “involved in” and “all actions.” BPPNA objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA states that it is not presently aware of any actions by Ragan during her employment that violated Federal or state laws or regulations.

**INTERROGATORY NO. 6:**

DESCRIBE ALL findings and conclusions YOU reached as a result of YOUR investigation in to KATHLEEN RAGAN'S share ownership of Clean Energy Fuels.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous as to the terms "findings" and "conclusions." BPPNA objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. Pursuant to Fed. R. Civ. P. 33(d), *see* Donna Weimer's November 7, 2016 email bearing the subject "RE: potential Conflict of Interest/Personal Account Dealing" and Donna Weimer's November 18, 2016 document titled "Follow up: Donna Weimer" for the findings and conclusions reached by Donna Weimer. BPPNA further states that when Dan Barry learned of the results of the investigation into Ragan's ownership of stock of Clean Energy Fuels Corp., Barry concluded that the fact that Ragan had bought shares in Clean Energy Fuels Corp. without notifying anyone was another sign of Ragan's poor judgment. BPPNA further states that when Carey Mendes learned of the results of the investigation into Ragan's ownership of stock of Clean Energy Fuels Corp., Mendes concluded that Ragan's conduct showed extremely poor judgment.

**INTERROGATORY NO. 7:**

DESCRIBE ALL actions in which YOU provided KATHLEEN RAGAN with copies of YOUR policies, YOUR code of conduct, YOUR trading guidelines, and YOUR bonus plans that apply to KATHLEEN RAGAN'S employment with YOU, and IDENTIFY ALL facts and DOCUMENTS that evidences or supports EACH instance.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is overbroad and not proportional to the needs of the case. BPPNA further objects to this

interrogatory on the grounds that it is vague and ambiguous as to the term "provided." BPPNA states that Ragan's offer letter made reference to the plan prospectus for the restricted stock units valued at $500,000 that Ragan would be receiving and also made reference to the Trader and Originator Bonus Plan and the IST Deferred Annual Bonus Plan; Ragan's New Hire Statement that she received at the same time she received her offer letter noted that the grant of restricted share units valued at $500,000 would be subject to the conditions of the plan; Ragan would have been provided with copies of the Restricted Share Plan II, the Trader and Originator Bonus Plan, and the IST Deferred Annual Bonus Plan upon request either before or after the onset of her employment; and the plan rules for the Restricted Share Plan II, the Trader and Originator Bonus Plan, and the IST Deferred Annual Bonus Plan were available to Ragan on the MyHR portal after she started employment. BPPNA further states that the March 2016 Reward Statement provided to Ragan stated "detailed information relating to your IST DAB . . . or RSP II grants is set out in the relevant plan prospectus available online in the Reward - Equity section at https://myhr.bpweb.bp.com." Ragan was provided with copies of the Code of Conduct and the Global Trading Guidelines (which are part of the IST Operating Standards and Control Processes) on or around June 17, 2015, in connection with her trader induction. Ragan received training on the Code of Conduct, the Global Trading Guidelines, and other BPPNA policies during various training sessions that Ragan completed between June 10, 2015 and December 6, 2016. Ragan was also provided with a link to the Code of Conduct in connection with her completion of her My Plan. *See* Ragan's offer letter, New Hire Statement, March 2016 Reward Statement, Trader Induction Checklist, the Excel spreadsheet titled "Training Record Report" for Ragan, and My Plans for Ragan, all of which have been produced in connection with BPPNA's responses to Ragan's requests for production of documents.

**INTERROGATORY NO. 8:**

IDENTIFY ALL DOCUMENTS YOU gave KATHLEEN RAGAN stating that her 2015 minimum bonus was discretionary, and IDENTIFY on what date you provided her with EACH DOCUMENT.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts. BPPNA further objects to this interrogatory on the grounds that it assumes facts not in evidence; specifically, the phrase "her 2015 minimum bonus" is inaccurate. *See* Ragan's April 23, 2015 offer letter and the March 2016 Reward Statement that was given to Ragan in late February 2016.

**INTERROGATORY NO. 9:**

DESCRIBE why you offered KATHLEEN RAGAN a $200,000 Sign-on Payment.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it calls for a narrative response. BPPNA further objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. Pursuant to Fed. R. Civ. P. 33(d), *see* Dan Barry's April 17, 2015 email to Ragan that was produced in connection with BPPNA's responses to Ragan's requests for production of documents.

**INTERROGATORY NO. 10:**

DESCRIBE why you offered KATHLEEN RAGAN a $500,000.00 minimum bonus for the 2015 performance year.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it calls for a narrative response. BPPNA further objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA further objects to this interrogatory to the extent it assumes facts not in evidence; specifically, the phrase "offered KATHLEEN RAGAN a

2015 minimum bonus" is inaccurate, as BPPNA simply informed Ragan in her April 23, 2015 offer letter that she was "eligible for a minimum bonus for the 2015 performance year (January 1st to December 31st 2015) in the amount of $500,000," that "[t]his potential bonus amount, which is provided at the sole discretion of BP, is strictly subject to the requirements of the Plan," and that Ragan would "lose [her] eligibility for this bonus opportunity if, in the sole discretion of BP, she: . . . Fail[ed] to comply with any of BP Policies, the BP Code of Conduct, BP Trading Guidelines . . . [or] Otherwise failed to meet BP's expectations." Pursuant to Fed. R. Civ. P. 33(d), *see* Dan Barry's April 17, 2015 email to Ragan that was produced in connection with BPPNA's responses to Ragan's requests for production of documents.

**INTERROGATORY NO. 11:**

DESCRIBE why you awarded KATHLEEN RAGAN $415,000.00 in cash and $85,000.00 in restricted stock for her 2015 minimum bonus, instead of awarding the 2015 minimum bonus, and IDENTIFY ALL individuals involved in making this decision.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "involved in." BPPNA further objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA further objects to this interrogatory to the extent it assumes facts not in evidence; specifically, the phrase "her 2015 minimum bonus" is inaccurate. BPPNA states that for 2015, Ragan received a cash bonus of $415,000.00 and an $85,000.00 Integrated Supply and Trading-Deferred Annual Bonus award in the form of restricted share units due to the requirements of the Trader and Originator Bonus Plan (*see* Appendix IV of that Plan) and the IST Deferred Annual Bonus ("DAB") Plan (*see* number 1 in the section of that Plan's Prospectus that is entitled "Frequently Asked Questions and Answers about the Plan").

**INTERROGATORY NO. 12:**

DESCRIBE why you offered KATHLEEN RAGAN $500,000.00 in restricted stock units.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it calls for a narrative response. BPPNA further objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA states that it offered Ragan restricted stock units (RSUs) valued at $500,000 at the time of grant in the offer letter to Ragan, and that these RSUs were broken down as follows: $120,000 that would vest in 2017, which represented 200% of Ragan's 2014 deferred cash bonus with Shell; $230,000 that would vest in 2018, which represented 200% of Ragan's 2015 deferred cash bonus with Shell; $50,000 that would vest in 2018, which represented a buyout of Ragan's RSUs with Shell; $80,000 that would vest in 2018, which represented a buyout of Ragan's pension with Shell; and $20,000 that would vest in 2018, which represented rounding to get to a total of $500,000 in RSUs.

**INTERROGATORY NO. 13:**

DESCRIBE the amount of money expensed by Daniel Barry and Zachary Scott associated with the recruitment of KATHLEEN RAGAN.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "associated with the recruitment."

**INTERROGATORY NO. 14:**

DESCRIBE the overall performance of the carbon book during KATHLEEN RAGAN'S employment.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it is overbroad and not proportional to the needs of the case. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "overall performance." Pursuant to Fed. R. Civ. P. 33(d), *see* the Excel spreadsheet titled "US emissions MTD/YTD by month" that was produced.

**INTERROGATORY NO. 15:**

DESCRIBE ALL individuals from the Global Environmental Products Group that received bonuses for the years 2014 through 2018 and IDENTIFY the total amount of the bonus, whether any portion of the bonus was deferred, whether any portion of the bonus was cash for EACH individual.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it is overbroad and not proportional to the needs of the case. BPPNA further objects to this interrogatory on the grounds that it seeks confidential information regarding individuals who are not party to this lawsuit. BPPNA understands, based on a meet-and-confer held with Plaintiff's counsel, that Plaintiff is seeking in this interrogatory to determine whether any individuals from the Global Environmental Products Group received annual bonuses for the years 2014 through 2018 and, unlike Ragan, did not have any portion of those bonuses deferred. BPPNA states that it made no exceptions to the deferral rules contained within the Trader and Originator Bonus Plan (which has been provided to Plaintiff) for anyone in the Global Environmental Products group who received annual bonuses for the years 2014 through 2018.

**INTERROGATORY NO. 16:**

DESCRIBE ALL BP employees actively involved with BP's partnership with CLNE during KATHLEEN RAGAN'S employment.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the terms "actively involved with" and "partnership." Pursuant to Fed. R. Civ. P. 33(d), *see* the Excel spreadsheet titled "Riptide - ITK List Summary Report" that was produced in connection with BPPNA's responses to Ragan's requests for production of documents for a list of all BP-affiliated individuals who were "in-the-know" with respect to the potential deal between BP and Clean Energy Fuels Corp.

**INTERROGATORY NO. 17:**

DESCRIBE ALL demands YOU made for repayment of the $200,000.00 Sign-on Payment before this lawsuit was initiated and IDENTIFY ALL DOCUMENTS evidencing such demands.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "demands." BPPNA states that it made demand for repayment via the offer letter language stating "You agree to repay 100% of this Sign-on Payment to BP if you resign or your employment is terminated with cause (e.g. breaching or non-compliance with the company's policies, guidelines, code of conduct, or not meeting performance requirements due to misbehaviours or willful disregards of BP rules or procedures) at any time within 24 months from the commencement date of this employment," and also in its July 26, 2017 confidential letter to Ragan in response to correspondence that her attorney sent on her behalf before this lawsuit was filed.

**INTERROGATORY NO. 18:**

DESCRIBE ALL instances where YOU deducted amounts from KATHLEEN RAGAN'S paychecks for reimbursement of the Sign-on Payment.

**ANSWER:**

BPPNA states that it did not deduct any amounts from Ragan's paychecks for reimbursement of the Sign-on Payment.

**INTERROGATORY NO. 19:**

DESCRIBE why KATHLEEN RAGAN was moved from a trading position to a marketing position in 2016.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it calls for a narrative response. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "marketing position." BPPNA further objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA states that Dan Barry, Carey Mendes, and Stephanie Curulewski decided to move Ragan from a trading role to an origination role because Ragan repeatedly failed to adhere to BPPNA's compliance requirements and showed poor judgment, which ultimately resulted in Ragan committing a delegation of authority breach that was serious enough that it was considered a Category A incident (the most serious incident of this type). Accordingly, on or around May 23, 2016, Barry and Curulewski informed Ragan that based on the recent Category A incident and other control and trading issues, Ragan's trading DOAs were being revoked effective immediately and BP was expediting her transition out of a trading role and into an origination role.

**INTERROGATORY NO. 20:**

IDENTIFY ALL other BP employees who, since January 1, 2008, have been terminated for the same alleged violations as KATHLEEN RAGAN.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it is overbroad and not proportional to the needs of the case. BPPNA further objects to this interrogatory on the grounds that it seeks confidential information regarding individuals who are not party to this lawsuit. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the term "for the same alleged violations." BPPNA further objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA states that since January 1, 2008, no employees have been terminated for engaging in all of the same violations as Ragan.

**INTERROGATORY NO. 21:**

DESCRIBE ALL bases for Daniel Barry's departure from employment with BP that are RELATED to KATHLEEN RAGAN or this lawsuit, and for EACH basis, IDENTIFY all individuals involved in this decision, and IDENTIFY ALL facts and DOCUMENTS that evidences or support EACH basis.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it seeks confidential information regarding an individual who is not a party to this lawsuit. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the terms "bases," "related to," and "involved in." BPPNA further objects to this interrogatory on the grounds that it contains multiple subparts and calls for a narrative response. BPPNA objects to this interrogatory to the extent that it seeks information

protected by the attorney-client or work-product privileges. BPPNA further objects to this interrogatory on the grounds that it assumes facts not in evidence; BPPNA did not employ Dan Barry. To BPPNA's understanding, and as it relates to Kathleen Ragan, Mr. Barry received a final written warning in November 2017 from Martin Perrie based on Mr. Perrie's findings that Mr. Barry breached the Group Travel and Entertainment Policy when he submitted claims for non-business expenses in connection with a night out in Los Angeles in April 2015 where Kathleen Ragan was in attendance and that Mr. Barry had breached BP's Code of Conduct by displaying possible inappropriate behavior for a Senior Level Leader representing BP during that night out in Los Angeles. There were additional reasons for Mr. Barry's termination that were unrelated to Kathleen Ragan. Carey Mendes and Alan Haywood made the decision to terminate Mr. Barry's employment in January 2018, with input and agreement from Simon Ashley. This decision was based, in part, on Mr. Barry's final written warning. A copy of the final written warning and the investigation interview notes that preceded that final written warning have been produced.

**INTERROGATORY NO. 22:**

DESCRIBE ALL bases for Daniel Barry's departure from employment with BP, and for EACH basis, IDENTIFY all individuals involved in this decision, and IDENTIFY ALL facts and DOCUMENTS that evidences or support EACH basis.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it seeks confidential information regarding an individual who is not a party to this lawsuit. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the terms "bases," "related to," and "involved in." BPPNA further objects to this interrogatory on the grounds that it contains multiple subparts and calls for a

narrative response. BPPNA objects to this interrogatory to the extent that it seeks information protected by the attorney-client or work-product privileges. BPPNA further objects to this interrogatory on the grounds that it assumes facts not in evidence; BPPNA did not employ Dan Barry. See BPPNA's answer to Interrogatory No. 21 above. In addition to this, Mr. Barry engaged in an additional expense misjudgment and received negative feedback with regard to his Compliance Leadership. This led to a loss in BP's confidence in Mr. Barry's suitability to be in a leadership or a senior commercial role within BP.

**INTERROGATORY NO. 23:**

IDENTIFY ALL DOCUMENTS in Daniel Barry's personnel file RELATING TO KATHLEEN RAGAN.

**ANSWER:**

BPPNA objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense. BPPNA further objects to this interrogatory on the grounds that it is vague and ambiguous with respect to the terms "personnel file" and "relating to." BPPNA further objects to this interrogatory on the grounds that it seeks confidential information regarding an individual who is not a party to this lawsuit. BPPNA further objects to this interrogatory on the grounds that it assumes facts not in evidence; BPPNA did not employ Dan Barry. Pursuant to Fed. R. Civ. P. 33(d), see the final written warning issued to Mr. Barry in November 2017 and the investigation interview notes that preceded that final written warning, which was produced.

**DATED: December 13, 2018**

Respectfully submitted,

BP PRODUCTS NORTH AMERICA INC.

By: s/ Katherine Mendez
One of Its Attorneys

Katherine F. Mendez
kmendez@seyfarth.com
Ashley K. Laken
alaken@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

## VERIFICATION

I, Jim Bordignon, IST Compliance Manager for BP Products North America Inc., have read the foregoing BP Products North America Inc.'s Supplemental Answers to Interrogatories and verify that the statements contained therein are true and accurate to the best of my knowledge, information, and belief. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 13, 2018

Jim Bordignon

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a true and correct copy of the foregoing BP PRODUCTS NORTH AMERICA INC.'S SUPPLEMENTAL ANSWERS TO INTERROGATORIES was served upon:

Joseph L. Kish
Kelley S. Gordon
Segal McCambridge Singer & Mahoney
233 S. Wacker Drive, Suite 5500
Chicago, IL 60661
jkish@SMSM.com
ksgordon@SMSM.com

by electronic mail and U.S. mail, postage prepaid, on the 13th day of December, 2018.

s/ Katherine Mendez
Katherine Mendez